IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JANET MCGRADY,**

      **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**Case No. 2:14-cv-983**

**Magistrate Judge Elizabeth P. Deavers**

**OPINION AND ORDER**

Plaintiff, Janet McGrady, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Court by consent of the parties for consideration of Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 7). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I. BACKGROUND**

Plaintiff filed her application for benefits on November 29, 2011, alleging that she has been disabled since July 29, 2011. (R. at 86.) Plaintiff alleges disability from chronic obstructive pulmonary disease, obesity, diabetes mellitus, affective disorder, and panic disorder. (R. at 88.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Paul E. Yerian ("ALJ") held a hearing on July 24, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 109-138.) Vocational Expert Hermona Robinson ("VE") also appeared and testified at the hearing. (R. at 139-144.)

On October 21, 2013, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 98.) On May 29, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she lives in a single-story house with a friend. (R. at 111.) She said that she has an associate's degree. (R. at 112.) Plaintiff stated that she is licensed to drive and owns a car but that she does not drive more than two times per week and not more than five miles round trip each time. (R. at 111-112.)

Plaintiff testified that she previously worked for JC Penney as a package handler and inspector at a warehouse from 1998 to 2004, when the company phased out her job at that location. (R. at 115-116.) Plaintiff further testified that she then worked as a home healthcare provider, first as an employee of Triad Home Health Services from 2005 to 2007 and then independently until 2011, at which point she was unable to find clients to continue working. (R. at 114-115, 132.)

Plaintiff testified that she drove to the hearing and that she got lost multiple times on the way even though she wrote down directions and consulted them multiple times. (R. at 118.) She explained that she has memory problems that cause her to forget things like the directions. (*Id.*) Plaintiff also stated that she has problems with her short-term memory in general and suggested that later in the day she would be unable to recall large portions of the hearing. (ECF R. at 122.)

2

Plaintiff also testified that she becomes agitated when she is around other people and that she becomes nauseated and anxious at the thought of leaving the house. (R. at 119-121.) She stated that she does not go to the grocery store without her housemate and that he often goes into the store to shop while she remains in the car. (R. at 119.) Plaintiff added that she has no friends other than her housemate. (R. at 121.)

Plaintiff testified that she has irregular sleep patterns in which she will, for many days, sleep only from midnight until approximately 3:00 a.m., after which she will sleep constantly for several days. (R. at 121-122.) She said that in a typical day she reads, watches television, and goes on the internet. (R. at 135.) Plaintiff stated that she has problems concentrating both while reading and when on the computer. (R. at 135, 136.) Plaintiff estimated that she leaves the house on her own, at most, once a month (R. at 123.) She further stated that she does not participate in any club, organization, or church. (R. at 137.) She said that she becomes uncomfortable in the presence of others and felt uncomfortable during individual counseling sessions and the hearing itself, at which four other people were present. (*Id*.)

Plaintiff testified that she is able to do some household chores, but only in increments. (R. at 123.) She averred that physical exertion causes her blood pressure to drop, which she said caused her to experience light-headedness, dizzy spells, and general lethargy. (*Id*.) She added that only her housemate takes care of their pets, two cats and a dog. She also testified that, in the mornings, her fingers are numb, and her forearms hurt. She characterized the pain as a "nine." (R. at 124.) Plaintiff said that, in the morning, she takes ibuprofen for the pain and puts ice packs on her arms, after which the pain is an "eight." (*Id*.) She further stated that grasping the steering wheel during the drive to the hearing caused pain. (*Id*.) Plaintiff attributed the pain and

3

numbness to carpal tunnel syndrome that she said she developed when working for JC Penney. (R. at 125.)

Plaintiff testified that she also developed arthritis in her right shoulder when working at JC Penney and that she had bone spurs removed from her shoulder twice. (*Id*.) She stated that picking up a 12-pack of soda is difficult for her and that she no longer hand-carries her groceries from her car to the house, but instead uses a cart. (R. at 121.) She also said that her joints become sore and her back hurts when she sits for extended periods of time. (*Id*.) She opined that twenty minutes is the longest she could sit at one time. (R. at 127.) She also stated that standing for an extended period causes her legs to cramp and her back to hurt. (*Id*.) She estimated that she could remain standing for up to thirty minutes. (*Id*.) Plaintiff added that walking causes her to become "winded," and that she was "huffing and puffing" after walking the two blocks from her car to the hearing. (R. at 127-128.)

Plaintiff testified that she has a history of using cocaine, but that she quit approximately two years before the hearing. (*Id*.) She stated that she does not use illegal drugs or drink alcohol. (*Id*.) She also stated that she does not smoke or use other tobacco products. (R. at 136.)

Plaintiff testified that she has difficulty controlling her temper and that she often develops sudden anger toward people around her for reasons that are not apparent to her. (R. at 130.) She attributed much of her difficulty dealing with others to the death of her son at the end of 2008. (R. at 131.) According to Plaintiff, she started counseling but forgot several appointments because of her memory problems, which led to the psychiatrist dropping her from the program. (R. at 132-133.) She stated that after becoming unemployed and losing her healthcare benefits,

4

she could no longer go to a psychiatrist or afford the $4.00 copay for her medications. (R. at 133-134.) Plaintiff said that she was suffering symptoms of her diabetes mellitus, including dry and cracking skin, pain in her feet, and generalized bruising. (R. at 138.) She explained that she did not have access to medication and that she was out of lancets and test strips to check her blood sugar. (R. at 137.)

**B.     Vocational Expert Testimony**

The VE identified Plaintiff's past relevant employment as a home healthcare worker, package handler, and package inspector. (R. at 140.) She noted that the home healthcare worker position was performed at a semi-skilled, heavy or very heavy exertional level and that the package handler and inspector positions were performed at the unskilled and light exertional level. (*Id*.)

The VE testified that an individual with Plaintiff's age, education, and work experience who can perform the exertion requirements of light work, maintain concentration for 2-hour segments, and adapt to occasional changes in the workplace not involving more than occasional contact with others would be precluded from work as a home healthcare worker because of the exertional level, but could perform the work of a package handler or inspector. (R. at 141-142.) The VE also testified that someone with all of the limitations discussed at the hearing—to include problems "with sitting, standing and walking no more than 20 minutes sitting at a time, minimal standing, walking, problems with shortness of breath with minimal activity, the limitation or symptoms associated with the problems sleeping, the short term memory loss, the recurring crying spells, the problems with the upper extremities and the issues in dealing with

others because of agitation and mood swings"—would be unable to perform any competitive work. (R. at 142.)

The VE stated that she believed the most vocationally significant aspect of Plaintiff's testimony was the sitting and standing limitations, as well as the difficulty with interpersonal interactions caused by Plaintiff's mood swings. (R. at 143.)

### III. MEDICAL RECORDS

**A. Mental Impairments**

**1. Columbus Neighborhood Health Center**

Plaintiff began mental health treatment at Columbus Neighborhood Health Center on February 14, 2012. She complained of depression, symptoms of which included feelings of hopelessness and irritability, fatigue, low energy, and poor concentration. (R. at 478.) Nurse Practitioner Shui Chu Chou conducted a physical examination of Plaintiff. Chou categorized Plaintiff as alert and oriented. (*Id.*) Plaintiff's medical history reflected that she is a daily smoker, an occasional consumer of alcohol, and at least an occasional user of cocaine. (*Id.*) Plaintiff received drug prescriptions to treat her depression. (R. at 479.) Chou saw Plaintiff again on February 22 and March 13, 2012. At the second of these visits, Plaintiff complained of the same depression symptoms, and she received an increase in her dosage of Wellbutrin and a referral to a social worker. (R. at 474-476.)

Grace Luangisa, LISW, conducted a social service interview and diagnostic interview with Plaintiff on March 13, 2012. Plaintiff reported suffering fatigue, anxiety, inability to concentrate, memory problems, erratic sleeping patterns, low appetite, crying spells, loneliness, and isolation. (R. at 472.) Luangisa reported that Plaintiff displayed normal affect, showed good

judgment, was logical and goal directed, had intact long- and short-term memory, and presented no abnormal perception or thought processes. (R. at 473.) When discussing treatment resources, Plaintiff expressed an interest in receiving a referral to a psychiatrist, but she was unwilling to continue counseling. (*Id*.)

## 2.   Community Counseling Centers

Plaintiff began psychiatric treatment with Dr. Asim Farooqui on May 31, 2012. At her initial appointment, Plaintiff reported progressively worsening depression with a 2003 onset. (R. at 550.) She also said that she had become reclusive and withdrawn, slept approximately four hours per night, had fluctuating appetite and weight, and experienced frequent panic attacks. (*Id*.) Dr. Farooqui characterized her as logical and cooperative, with normal affect and fair judgment. (R. at 551-552.) He diagnosed her as depressive and agoraphobic and put her on a regime of prescription medication. (R. at 552.) He also incorporated counseling in his follow-up plan. (R. at 553.)

At her next visit, Plaintiff reported sleeping no more than three hours per day and experiencing frequent crying spells and social withdrawal. She said that leaving home for medical appointments caused her anxiety. (R. at 554.) Dr. Farooqui described Plaintiff as cooperative and logical. He also noted that she was tearful and showed poor concentration and attention. (*Id*.) He started Plaintiff on Latuda, in addition to her other medications, for short-term control of bipolar disorder. (R. at 555.)

Dr. Farooqui provided treatment notes through August 16, 2012. (R. at 550-559.) The notes from July 26 and August 16, 2012 reflect no significant changes from her July 5, 2012 visit when Dr. Farooqui described Plaintiff as "cooperative," "tangential but logical," and

7

"depressed." (R. at 554.) He described Plaintiff's behavior as "appropriate" and her judgment as "fair." (*Id.*) He observed that she suffered no delusions but was experiencing "poor" concentration and attention. (*Id.*)

On September 6, 2012 Dr. Farooqui completed medical source residual mental functionality questionnaire reporting his conclusions about Plaintiff's ability to do work-related activities. (R. at 563.) Dr. Farooqui, in the first checkbox section, reported that Plaintiff has a marked restriction in understanding and remembering simple instructions, carrying out simple instructions, and making judgments about simple work decisions. (*Id.*) He reported that Plaintiff has extreme restrictions in understanding and remembering complex instructions, carrying out complex instructions, and making judgments about complex work decisions. (*Id.*) In support of his assessment, Dr. Farooqui identified several factors that he believed cause Plaintiff's restrictions. He reported that Plaintiff "has recalcitrant Bipolar disorder which has not responded well to treatment." (*It.*) Dr. Farooqui remarked that this condition "affects stability of her mood and cognition with unprovoked anger outbursts that are not conducive to [the] workplace." (*Id.*) He concluded that "the demands of even part time work will deteriorate her limited mental composure." (*Id.*) Dr. Farooqui reported in the second checkbox section that Plaintiff has moderate restrictions on her ability to interact appropriately with the public, marked restrictions on her ability to interact appropriately with supervisors and co-workers, and an extreme restriction on her ability to respond appropriately to normal work situations and changes in her routine work setting. (R. at 564.) In support of his assessment, Dr. Farooqui cited that the same factors as in the previous checkbox section. (*Id.*)

## IV. THE ADMINISTRATIVE DECISION

On October 1, 2013, the ALJ issued his decision. (R. at 83.) The ALJ found that Plaintiff met the insured status requirements through December 31, 2011. (ECF No. 7-2 at 87.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of July 28, 2011. (R. at 88.)

The ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, obesity, diabetes mellitus, an affective disorder, and a panic disorder. (*Id.*) The ALJ also found that Plaintiff has hypertension, but that it is not a severe impairment. (R. at 89.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Part 404, Subpart P, Appendix 1. (R. at 89.) At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to simple, repetitive tasks. She is further limited to work involving no more than occasional contact with others and no more than occasional adaptations to changes in a work setting. She can sustain her attention and concentration for two hour segments."

(R. at 91.) In reaching this determination with respect to Plaintiff's mental impairments, the ALJ assigned "minimal weight" to the opinion of treating source Dr. Asim Farooqui. (R. at 96.) The ALJ found that Dr. Farooqui's opinion was inconsistent with other record evidence. (*Id.*) He also found Dr. Farooqui's opinion to "be based solely on the claimant's subjective complaints" and "so extreme and inconsistent" that it should not be "given any credence at all." (*Id.*)

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform her past work as a package handler or inspector. (R. at 97.) The ALJ therefore concluded that Plaintiff is not disabled under the Social Security Act. (R. at 98.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

In her Statement of Errors, Plaintiff advances the following two contentions of error: (1) the ALJ incorrectly concluded that Plaintiff could perform her past relevant work as a home healthcare worker; and (2) the ALJ failed to properly weigh the opinion provided by Plaintiff's treating source, Dr. Farooqui.  The Court addresses each of these contentions of error in turn.

### A.  Past Relevant Work

Plaintiff contends that the ALJ erred in concluding that she could perform her past work as a home healthcare worker.  The ALJ found the Plaintiff to have "the residual functional

11

capacity to perform light work . . . except that she is limited to repetitive tasks." (R. at 91.) The VE testified at the administrative hearing that Plaintiff's prior work as a home healthcare worker is classified at the medium exertional level. (R. at 140.) Nevertheless, the ALJ concluded that Plaintiff is "capable of performing her past relevant work . . . as a home health aide." (R. at 97.)

As a threshold matter, the Court agrees that the ALJ erred in finding that Plaintiff could perform her prior work as a home healthcare worker. However, the ALJ's finding is subject to analysis under the harmless error rule. *Rabbers*, 582 F.3d at 654-655; *see Shinseki v. Sanders*, 556 U.S. 396, 406, 408-409 (2009). The Court will not remand an administrative proceeding "unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" *Rabbers*, 582 F.3d at 654 (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).

The Court finds that the ALJ's error is harmless in light of the finding that Plaintiff can also perform her prior relevant work as a package handler or inspector. The ALJ relied on the VE's uncontradicted testimony, consistent with the *Dictionary of Occupational Titles* and SSR 00-4P, to conclude that Plaintiff can perform her prior work as a package handler and inspector. (R. at 98; *see* R. at 140-142.) Plaintiff does not challenge this conclusion in her Statement of Errors. Plaintiff retains the burden to show an inability to perform any past relevant work. *Allen v. Califano*, 613 7.2d 139, 145 (6th Cir. 1980). Because Plaintiff has not challenged the ALJ's finding that she can perform her prior work as a package handler or inspector, any finding with regard to her other prior work is harmless. Therefore, Plaintiff's first assignment of error is without merit.

**B.   Treating Source Opinion**

Plaintiff next asserts that the ALJ erred in three ways in assigning treating source Dr. Farooqui's opinion only minimal weight.  According to Plaintiff, the ALJ first erred in failing to assess the opinion in accordance with the factors set forth in 20 C.F.R. § 404.1527(c).  Plaintiff further posits that the ALJ failed to "follow the two-step analysis required by the Sixth Circuit when evaluating source opinions: (1) should controlling weight apply; and if not, (2) did the ALJ address how much weight to be given to the opinion?"  (ECF No. 12 at 6.)   Finally, Plaintiff challenges the ALJ's bases for discounting, without substantial evidence in support, Dr. Farooqui's opinion as "based upon subjective complaints, and . . . so extreme and inconsistent to be given any credence at all."  (*Id*.)

In evaluating a claimant's case, the ALJ must consider all medical opinions that he or she receives.  20 C.F.R. § 416.927(c).  Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

[claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 f.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no

14

requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).

The ALJ acknowledged Dr. Farooqui as a treating source, but assigned "minimal weight" to his September 2012 opinion. (R. at 91.) The ALJ found that Dr. Farooqui's medical opinion was "inconsistent with the medical evidence of record." (*Id*.) He also found that Dr. Farooqui's "opinion appears to be based solely on the claimant's subjective complaints," which the ALJ found to be not credible.[2] (R. at 96.) The ALJ determined that Dr. Farooqui's opinion was too "extreme and inconsistent to be given any credence at all." (*Id*.) He found the opinion to conflict with Plaintiff's own testimony about her daily activities and noted that it did not acknowledge Plaintiff's history of cocaine use. (*Id*.)

Plaintiff asserts that "the ALJ merely opines that Dr. Farooqui's assessment is inconsistent with the medical evidence of record, which is vague and fails to provide any justification." (ECF No. 12 at 6.) She also maintains that the ALJ's conclusion that Dr. Farooqui's opinion is too inconsistent with the record to be given credence "is simply not true." (*Id*.)

To meet the reason-giving requirements of 20 C.F.R. § 416.927(c), the ALJ's analysis must allow a reviewing court to clearly understand both the weight given to a treating source opinion and the reasons for that weight. Although brief, the ALJ's discussion of Dr. Farooqui's opinion clearly and succinctly informs both the Plaintiff and the Court of the reasons for giving Dr. Farooqui's opinion minimal weight: the opinion conflicted with substantial record evidence and was based on Plaintiff's subjective complaints rather than objective medical evidence.

---

[2] Plaintiff does not challenge the ALJ's credibility finding.

Furthermore, substantial evidence supports the ALJ's offered reasons for discounting Dr. Farooqui's opinion. The ALJ found, first, that Dr. Farooqui's opinion was inconsistent with other medical evidence of record. (R. at 96.) In contrast with Dr. Farooqui's opinion, which found Plaintiff markedly impaired, treatment reports from March 2012 described Plaintiff as depressed, but also "[g]oal directed and logical." (R. at 473.) The same report also found no memory problems and no abnormal affect or thought content. (*Id.*)

The ALJ also found Dr. Farooqui's medical opinion inconsistent with Plaintiff's own testimony at the administrative hearing. Plaintiff testified that she is able to drive and in fact did drive herself to the hearing. (R. at 112.) She also said that she is able to do chores around the house, the only limitation being physical, rather than mental, impairments. According to Plaintiff, "it wears me out doing anything physical. I can only do something in very small increments . . . . [B]ecause when I get overexerted . . . my blood pressure drops. I get light-headed and dizzy, lethargic." (R. at 123.) Plaintiff said that she is able to cook, but often has to sit down after half an hour because of back pain. (R. at 127.) Plaintiff further testified that on a typical day she uses the computer, reads books, or watches television. (R. at 135.) Plaintiff's testimony supports the conclusion that she is able to logically arrange her thoughts and explain them to others, even strangers, for extended periods of time, with no abnormal thoughts or memory dysfunction. The hearing transcript, therefore, tends to contradict Dr. Farooqui's opinion of Plaintiff's mental impairments.

Plaintiff argues that the ALJ improperly discounted her "extremely low GAF scores" in determining whether record evidence supported Dr. Farooqui's medical opinion. (ECF No. 12 at 7.) However, a GAF score represents a mere "snapshot" of a person's "overall psychological

16

functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 F.App'x 191, 194 N. 2 (6th Cir. 2003); *see also* DSM-IV-TR at 32-34. "As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *Arnold v. Astrue*, No. 10-cv-13, 2010 WL 5812957, at *8 (S.D. Ohio Oct 7, 2010). For this reason, the ALJ's decision to discount Plaintiff's GAF scores is not error. Moreover, it is not the function of a reviewing court to re-weigh the evidence or make independent judgments.

As the discussion above makes clear, sufficient substantial evidence exists in the record, taken as a whole, to allow a reasonable mind to support the ALJ's conclusion. This is not to say that there is no substantial evidence to support a different conclusion or even that this Court would not have decided the issue another way. However, "once well-supported contradictory evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh.' " *McMurphy v. Comm'r of Soc. Sec.*, No. 13-10600, 2014 WL 917046, at *16 (E.D. Mich. Mar. 10, 2008)). In the instant action, the ALJ provided adequate contradictory evidence to reject Dr. Farooqui's opinion. Even acknowledging that evidence exists in the record that detracts from the weight of the Commissioner's decision, the Court finds that substantial evidence exits to support the ALJ's findings. Under the Social Security Act, the Court must affirm a decision supported by substantial evidence. *Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") (internal quotation omitted).

Lastly, the Plaintiff argues that the ALJ came to his decision to give Dr. Farooqui's opinion minimal weight without applying the required *Wilson* factors. (ECF No. 12 at 6.) Although it is true that the ALJ only directly mentioned one of the *Wilson* factors in his opinion, the Court is mindful that the ALJ is not required to "expressly" analyze each factor in his written decision. *Tilley*, 394 F. App'x at 222. Moreover, it is apparent that the ALJ considered other *Wilson* factors in making his findings. By characterizing Dr. Farooqui as a treating source, the ALJ addressed the nature and extent of the treatment relationship. He also addressed the supportability of Dr. Farooqui's opinion by explaining that it "appears to be based solely on the claimant's subjective complaints." (R. at 96.) The Undersigned finds that the ALJ properly addressed and rejected the doctor's opinion using the *Wilson* factors.

Thus, for the reasons explained above, the Undersigned finds that Plaintiff's second assignment of error lacks merit.

### VII.  CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Commissioner of Social Security's decision is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.


Date:  September 28, 2015                                         */s/ Elizabeth A. Preston Deavers*
                                                                                   ELIZABETH A. PRESTON DEAVERS
                                                                                   UNITED STATES MAGISTRATE JUDGE